**A.G. EDWARDS AND SONS, INC., Appellant,**

v.

**Shirley A. HILLIGOSS and Robert E. Causey, Appellees.**

No. 77A04–9004–CV–188.

Court of Appeals of Indiana, Fourth District.

March 11, 1991.

Louis F. Britton, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for appellant.

Bruce D. Aukerman, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellees.

CONOVER, Judge.

Defendant–Appellant A.G. Edwards & Sons, Inc. (broker) interlocutorily appeals

the Vigo Superior Court, Division 1's order[1] in favor of Plaintiff–Appellee Shirley A. Hilligoss (client) denying broker's motion to stay proceedings in favor of arbitration. Defendant–Appellee Robert E. Causey (manager) does not participate in this appeal.

We affirm.

Re-stated, the issues here presented are

1. whether client's claim of fraudulent procurement must be arbitrated, and

2. whether substantial evidence supported the trial court's determination that client's signature, on broker's customer agreement form requiring arbitration of broker-client disputes, was fraudulently procured.

When her marriage was dissolved, the dissolution court awarded client a portion of her former husband's stock investments valued at $18,000, and a one time cash payment to her of $15,000. The dissolution order, however, required her to partially fund her two children's college educations. Any funds remaining were to be used as her retirement account.

Manager and client were long time friends. Client trusted him. While consulting with manager on what she should do with her $33,000, manager assured client her funds would be safely invested in interest bearing, principal protecting investments, if she invested with broker. On this assurance, client invested almost the whole of her $33,000 dissolution settlement with broker. Although broker had printed form contracts titled "Customer's Agreement" prepared for its customers signatures, manager did not present such a form to client for signature in October, 1987, when she first began dealing with broker through manager. Each customer agreement form contained a clause requiring arbitration of disputes between client and broker which might arise while broker was representing client.

Four months later in February, 1988, client wanted to buy a truck to pull her boat. She went to broker to withdraw the necessary funds from her account, but manager told her she could borrow from broker "on margin". She would have to repay it, of course, but there would be no monthly payment. She decided to borrow the necessary funds in that manner. At that time, manager presented client with broker's customer agreement form and asked client to sign it. She signed without reading it. Regarding the circumstances under which she signed the document, she testified

Q. Okay, would you explain to the court why you didn't read the papers?

A. I had known Bob [manager] for a long time and had considered him a friend, and I trusted him and I figured if he said this is what I had to sign, and this was the process, then that's what it was, so I signed it.

. . . . .

Q. Shirley [client], what did you understand this document to be?

A. Process that in order to follow through with getting the money that this is the procedure that you followed and that is what I did.

(R. 176).

Client claims almost immediately after she signed broker's customer agreement form, broker and manager began making stock trades in client's account in speculative stock and stock options, amassing large commissions and losses, without her consent. When she later discovered these manipulations had reduced the value of her account substantially, she closed her account with broker and filed suit.

From the trial court's order denying stay pending arbitration, broker appeals.

Broker first argues this case is governed by the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq., because these transactions involved interstate commerce: broker's of-

---

1. This interlocutory appeal comes to us from the Sullivan Superior Court even though the order appealed was made in Vigo Superior Court's Division 1. This occurred because three days after the Vigo Superior Court's order was entered, broker took a change of venue which was perfected in Sullivan Superior Court. It duly certified the earlier court order for interlocutory appeal, and we accepted it as such.

fice is in Indiana, client resides here, and broker trades out of state. That being so, broker asserts federal authority under that act mandates arbitration of fraudulent inducement claims. Client's complaint must be submitted to arbitration under the provisions of the agreement she signed, broker posits. On the other hand, client argues only an intra-state loan transaction was involved so federal law does not apply. In the alternative, client also argues, regardless of whether state or federal statutory law does apply, manager's fraudulent inducement of client to sign broker's customer agreement form voids the whole agreement, and the issue may be submitted to the courts for resolution.

Both the Federal and state arbitration acts by their terms do not apply to contracts which are revocable upon such grounds "as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2, IND.CODE 34-4-2-1. Thus, the question is whether (a) manager's obtaining of client's signature on broker's customer's agreement constituted fraud, and (b) if so, did it void the contract?

The relationship of principal and agent was established between broker and client when she first delivered her funds to broker for investment in secure investments. In such case, the principal may without inquiry or investigation rely on the statements of his agent, or confidential advisor, as to the contents of a written instrument. If the agent materially misstates a writing's contents, it is vitiated for fraud. *Robinson, et al. v. Glass* (1883), 94 Ind. 211, 214–215. Further, to knowingly misstate the contents of a writing and to purposely misstate facts which would cause the signing of the same is fraud. *Farm Bureau Mutual Ins. Co. v. Seal, Admr.* (1962), 134 Ind.App. 269, 179 N.E.2d 760, 765.

Fraud in the inducement of a contract is a basis for its rescission. *Indiana & Michigan Elec. Co. v. Harlan* (1987), Ind.App., 504 N.E.2d 301, 306, *reh. den'd., trans. den'd; Hogan Trans. & Storage Corp. v. Waymire* (1980), Ind.App., 399 N.E.2d 779, 785. The party bringing an action based upon fraudulent inducement in the execution of a contract has an election of remedies; he may stand upon the contract and seek damages, or rescind the contract, return any benefits he may have received, and seek a return to the status quo ante. *Harlan*, at 306–307; *Grissom v. Moran* (1972), 154 Ind.App. 419, 290 N.E.2d 119, 125, *reh. den'd.* (1973), 292 N.E.2d 627. Thus, the contract in question was at least revocable for fraud under Indiana law and falls squarely within the exception contained in both the federal and state acts if manager's inducement to client to sign the customer agreement was in fact fraudulent. The trial court so held.

Whether fraud is present in a given factual posture is for the trial court to determine. *Property Owners, Inc. v. City of Anderson* (1952), 231 Ind. 78, 107 N.E.2d 3, 8; *Holtzclaw v. Bankers Mutual Ins. Co.* (1983), Ind.App., 448 N.E.2d 55, 59. Substantial evidence supports this determination. The trial court found

The evidence presented at hearing was that Causey [manager] procured Hilligoss' [client] signature to the customer agreement by representing it as a loan document, the signing of which was a formality for receipt of a loan.

.  .  .  .  .

In light of [manager's] understanding of all that the customer agreement provided for, to represent it as a loan document is a fraudulent misrepresentation that goes to the very nature of the document itself.

(R. 149). Client's testimony quoted above constitutes substantial evidence supporting the trial court's judgment.

Affirmed.

MILLER and SHIELDS, JJ., concur.