**Paula M. NOVOTNY, Appellant–Plaintiff,**

v.

**RENEWAL BY ANDERSEN CORPORATION, Renewal by Andersen, Inc., and Bee Window, Inc., Appellees–Defendants.**

No. 49A05–0602–CV–93.

Court of Appeals of Indiana.

Feb. 6, 2007.

G. Douglas Abrams, Abrams Weldy Drummond & Huiras, PA, Indianapolis, IN, Attorney for Appellant.

Richard N. Bell, Scott D. Gilchrist, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Paula M. Novotny appeals the trial court's order granting the motion to compel filed by Renewal by Andersen Corp., Renewal by Andersen, Inc. (collectively, "Andersen")[1] and Bee Window, Inc.[2]

We affirm.

*ISSUE*

Whether the trial court erred in granting the motion by Andersen and AGF to compel arbitration of Novotny's claims against Andersen and AGF.

*FACTS*

On March 13, 2004, Novotny ordered three sets of sliding glass doors from Andersen. On the same day, Novotny and Andersen entered into a Sales Agreement. The Sales Agreement listed several terms and conditions of the sale, including the following:

> Unless you and Renewal by Andersen otherwise mutually agree in writing, all claims and disputes arising in connection with the making of, entering into or performance of the Proposal will be finally settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitra-

tion Association in effect on the date of this Proposal by a single arbitrator appointed in accordance with such Rules. The costs of the arbitrator and the costs of both parties of proceeding in arbitration, including, without limitation, reasonable attorneys' fees and expenses, will be borne as to each claim submitted to arbitration by the substantially non-prevailing party on that claim. The award of the arbitrator will be in writing and will contain findings of fact and conclusions concerning applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having proper jurisdiction.

(App.102).

On July 1, 2004, Novotny and Andersen entered into a consumer credit sale agreement and security agreement (the "Loan Agreement"), whereby Andersen financed the sale of the doors. The Loan Agreement also contained an arbitration clause, providing, in part, as follows:

> In these Arbitration Provisions the term "Creditor" shall mean the Creditor and its Assignees.
>
> **ARBITRATION PROVISIONS.** Arbitration is a method of resolving disputes without filing a lawsuit in court. When you sign the Retail Installment Contract, Security Contract and Federal Disclosure Statement (called "Contract"), you and Creditor agree to all the arbitration provisions in this document (called "Arbitration Provisions").
>
> **RIGHT TO ELECT ARBITRATION.** You or Creditor can elect to have any "Covered Claims" (as defined below) re-

---

**1.** Both parties, in their briefs, spell the name as "Anderson." The proper spelling, however, is "Andersen." *See http://www.renewal byandersen.com* (Jan. 4, 2006).

**2.** On August 4, 2006, we granted a motion to substitute Bee Window, Inc., as successor party, for American General Finance, Inc. ("AGF").

solved by binding arbitration in accordance with the Arbitration Provisions, except for matters not covered by arbitration (as provided below). The right to make this election applies whether or not there is any pending or completed judicial action. If you bring a Covered Claim against Creditor in court (whether as a claim or counterclaim) . . . [3] Creditor can choose to have that Covered Claim resolved by binding arbitration. If Creditor brings a Covered Claim in court (whether as a claim or counterclaim), then you can choose to have that Covered Claim resolved by binding arbitration. **YOU UNDERSTAND THAT YOU ARE VOLUNTARILY WAIVING YOUR RIGHT TO A JURY OR JUDGE TRIAL FOR SUCH DISPUTES.**

\* \* \*

**ARBITRATION RULES AND PROCEDURES.** A single arbitrator shall conduct arbitration, under the Federal Rules of Evidence and National Arbitration Forum's Code of Procedure in effect at the time the claim is filed. . . . This Arbitration Provision shall be governed by the Federal Arbitration Act. **PLEASE GO BACK AND READ THE ARBITRATION PROVISIONS CAREFULLY. THEY LIMIT YOUR RIGHTS. BY SIGNING ON THE REVERSE, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED A COPY OF, AND AGREE TO BE BOUND BY, THE ARBITRATION PROVISIONS.**

(App.84–85). Andersen assigned the Loan Agreement to AGF.

At some point subsequent to entering into the Sales Agreement and Loan Agreement, subcontractors installed the doors in Novotny's home. On August 16, 2005, Novotny filed a lawsuit against Andersen and AGF, alleging Count I, breach of express warranty; Count II, breach of implied warranty for a particular purpose; Count III, breach of implied warranty of merchantability; Count IV, violation of the Indiana Deceptive Consumer Sales Act; Count V, fraudulent inducement; Count VI, detrimental reliance; and Count VII, breach of contract.

On October 11, 2005, Andersen and AGF filed a motion to compel arbitration, requesting that the trial court dismiss Novotny's action and compel arbitration. Novotny filed an objection to Andersen and AGF's motion on October 24, 2005, asserting as follows:

A. Indiana's Uniform Arbitration Act does not apply to "consumer leases, sales and loan contracts". IC 34–57–2–1(b).

B. Indiana['s] Uniform [A]rbitration Act does not apply to contracts which are revocable upon such grounds "as exist at law or in equity for the revocation of any contract." IC 34–57–2–1(a).

C. Defendant shows no enforceable agreement to arbitrate between Plaintiff and Defendant [AGF].

D. Impossibility of performance of the alleged arbitration agreements[.]

E. Defendants have waived the arbitration provision by their inconsistent behavior.

(App.75). Andersen and AGF filed a reply to Novotny's objection on October 27, 2005.

The trial court held a hearing on Andersen and AGF's motion to compel arbitration on December 8, 2005. Following the parties' arguments, the trial court found, in pertinent part:

---

**3.** Parts of this clause are illegible.

Plaintiff sued on several different theories, the main theory being breach of contract.... Essentially the Plaintiff is suing on the contract, Plaintiff admits there was a contract and the contract was entered into by the parties. It didn't turn out the way the Plaintiff wanted it to turn out.

Now let me move from the complaint and the [P]laintiff's position with regard to h[er] dispute with the defendants and to the main issue and that is whether the Court can grant the defendants' motion to arbitrate. And I want to turn to the Act cited by the Plaintiff, which is ... Indiana's version of the Uniform Arbitration Act.... [I]n plain language of the Act is this Uniform Act doesn't apply to consumer leases. The Plaintiff wants to argue to the Court that because the Act ... does not apply to consumer leases among other things in the Act itself, specific things that are exempt, that no dispute in a consumer related contract can be arbitrated. That's Plaintiff's proposition.

The Court disagrees with the Plaintiff. Contract [l]aw is not necessarily voided or unenforceable simply because the Uniform Act doesn't apply[.] There's certainly a lot of transactions or relationships both business and otherwise which uniform acts do not apply to the determination of that relationship.... And in this case there is a contract between Andersen ... and the Plaintiff to resolve any dispute with regard to any claim that each other may have against the other by virtue by this transaction....

\* \* \*

That that would be resolved by the process of arbitration. I think the parties are free to contract that irregardless [sic] of the Uniform Act and Counsel hasn't come forward with any case law to support the proposition that because it is a consumer sale, home improvement sale, that [ ] arbitration is void in all instances. The Court would find that ... the Uniform Act does not apply. Therefore, the Defendants would not have the benefit of the Uniform Act to compel arbitration but the parties['] agreement to arbitrate is still a valid contract between the parties. And, therefore, the Court would find that that's in fact what the parties agreed to do[,] to arbitrate.

The second contention by the Plaintiff was that we can't tell which clause or which instance we're supposed to arbitrate. We have two contracts essentially.... And each of their contracts, the one for financing and the one for installation contain separate or different arbitration clauses.... [T]he particular method or group that would do the arbitration is different in each clause. And here the Court would look to what or who the dispute centers on and it centers on the installation and defectiveness as the Plaintiff alleged with the installation of Andersen. Therefore, that clause would apply to resolve that difficulty with Andersen in so far as the defective installation or defective doors.... Certainly if there were a payment problem or ... difficulties with financing [AGF] would want their arrangement with Plaintiff to be arbitrated under their clause.... However, I find that [AGF] is still subject to that original clause between the Plaintiff and [Andersen] to arbitrate. So I hope that answers the second question which that first original agreement to arbitrate would apply in that organization be utilized.

(Tr. 17–19).

On December 19, 2005, the trial court entered its order, finding "that Counts I,

II, III, and IV allege claims that the parties have agreed to submit to arbitration" and further finding that "with respect to Count V of the Plaintiff's Complaint that the Motion should be taken under advisement subject to additional briefing by the parties." (App.63). The trial court therefore dismissed Counts I, II, III, and IV of Novotny's complaint and ordered the parties to further brief the issue regarding Count V. On December 27, 2005, the trial court entered an order *nunc pro tunc*, further granting the motion to compel arbitration as to Counts VI and VII.

The parties filed their respective supplemental memoranda regarding Count V on January 9, 2006. On February 2, 2006, the trial court entered its order granting Andersen and AGF's motion to compel arbitration as to Count V.

### DECISION

Novotny asserts the trial court erred in dismissing her complaint and compelling arbitration. Specifically, Novotny argues the trial court erred by 1) "compelling arbitration before making a finding that there was a valid and enforceable agreement"; and 2) granting the motion to compel despite "finding that the Indiana Arbitration Act did not apply." Novotny's Br. 1.

### 1. *Valid and Enforceable Agreement*

 Novotny asserts that the trial court erred in compelling arbitration of her claims before determining whether there was a valid and enforceable agreement. Our review of a trial court's ruling on a motion to compel is *de novo*. *Hemo-Cleanse, Inc. v. Philadelphia Indem. Ins.*

*Co.*, 831 N.E.2d 259, 262 (Ind.Ct.App. 2005), *trans. denied.* Whether parties have "agreed to arbitrate any disputes is a matter of contract interpretation, and most importantly, a matter of the parties' intent." *Precision Homes of Indiana v. Pickford*, 844 N.E.2d 126, 131 (Ind.Ct.App. 2006), *trans. denied.* Before imposing arbitration, however, a trial court must determine whether the arbitration agreement between the parties is valid. *Id.; Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind.Ct.App.1999). "Judicial inquiry is thus limited to the validity of the contract containing the arbitration clause, not the construction of that clause." *DeHaan*, 713 N.E.2d at 306.

 "In order to be enforceable, an agreement to arbitrate must be in writing and evince an intention to resolve some controversy through arbitration." *Id.* The Sales Agreement reads in relevant part as follows: "all claims and disputes arising in connection with the making of, entering into or performance of the Proposal will be finally settled by binding arbitration...." (App.102). The Loan Agreement provides as follows: "You or Creditor can elect to have any 'Covered Claims' (as defined below) resolved by binding arbitration in accordance with the Arbitration Provisions, except for matters not covered by arbitration (as provided below)." (App.110). Those matters not covered by arbitration include the "Creditor's self-help or judicial remedies including, without limitation, repossession or foreclosure...." (App.110). Clearly, the arbitration clauses are enforceable as they are in writing and set forth an intention to resolve all claims and disputes by arbitration.[4]

---

4. Novotny claims the trial court "reformed the contracts" she entered into with Andersen and AGF "by ordering the parties to agree to one forum for arbitration and one set of rules...." Novotny's Br. 17. The trial court

found that Novotny's claim "center[ed] on the installation and defectiveness" of the sliding glass doors provided by Andersen, and therefore, "that first original agreement to arbitrate would apply ..." with AGF being "sub-

Novotny, however, contends that the trial court erred in compelling arbitration without addressing her claims of fraud and fraud in the inducement.[5] We disagree.

In her complaint, Novotny alleged the following:

55. Defendants committed fraud and thereby did induce Plaintiff to enter into the Contract.

56. Part of such fraudulent scheme was explained by Defendants to Plaintiff as follows: Sales person for the Plaintiff [sic] will determine the amount of money that the proposed purchaser/consumer can afford. Sales person will then determine the product that meets the sales price criteria and then "sell" that product to the consumer. Such sale is made regardless of the needs or the particular purpose of the consumer, because the sales person does not get paid and the seller makes no money unless the sale is made.

57. The Doors were sold to Plaintiff using promises that the Doors would sustain and repel the Elements, and in essence that the Doors had a particular standard, quality and grade that the Defendant knew it did not.

58. Defendants concealed the true quality and grade of the Doors, including that the Door is actually designed to allow water penetration. . . .

59. Such Fraud was committed [sic] induce[d] Plaintiff to enter into the Contract also committed by making promises and warranties regarding the product or goods, knowing full well, that the "Contract" contains provisions excluding those express verbal promises; in essence Defendants believe they have cart blanche to make any statement, promises, or lie in an effort to sell a product and then fall back on the exclusionary statement in the Contract.

60. Plaintiff was fraudulently induced into the Contract by the fraudulent acts and scheme of Defendants.

(App.99).

"[A] question of whether an arbitration agreement ever was made or a question of whether the arbitration clause was repudiated is a question for a court." *Goebel v. Blocks and Marbles Brand Toys, Inc.*, 568 N.E.2d 552, 556–57 (Ind.Ct.App. 1991), *reh'g denied*. "In contrast to such threshold issues regarding the making of a contract are issues arising after formation of a contract and agreement to arbitrate, such as contentions of fraud in the inducement, waiver, and termination of contract." *Id.* at 557. Those are issues to be determined during arbitration. *Id.* Accordingly, we find that the trial court did not err in compelling arbitration of Novotny's claims, including her claims of fraud regarding the sliding glass doors.[6]

---

ject to that original clause between [Novotny] and [Andersen] to arbitrate." (Tr. 19). We find no reformation. Rather, the trial court is stating that any claim against AGF is subject to the final resolution of claims against Andersen.

5. We note that Novotny relies on the Act, specifically, Indiana Code section 34–57–2–3(a) in support of her contention that the trial court should have determined whether the arbitration agreements were invalid for fraud before compelling arbitration. Novotny,

however, cannot both rely on and reject the application of the Act.

6. In *A.G. Edwards and Sons, Inc. v. Hilligoss*, 597 N.E.2d 1 (Ind.Ct.App.1991), this court found a customer agreement to be revocable for fraud where there was evidence that the customer was fraudulently induced to sign a customer agreement requiring arbitration. *Hilligoss* is distinguishable from this case because in *Hilligoss*, the fraud went to the actual contents of the contract, and the facts regarding the contract, which included the

## 2. *Indiana Arbitration Act*

■ Notwithstanding that she agreed to arbitrate disputes arising between the parties, Novotny argues that the trial court could not compel arbitration because Indiana's Uniform Arbitration Act (the "Act") does not apply. Novotny therefore maintains that there is "no vehicle through which to compel arbitration." Novotny's Br. 11.

■ The Act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of arbitration awards. *Bopp v. Brames*, 677 N.E.2d 629, 631 (Ind.Ct.App.1997). The Act, however, "specifically exempts from its coverage all consumer leases, sales, and loan contracts," as those terms are defined in the Uniform Consumer Credit Code. Ind.Code § 34–57–2–1.

■ Nonetheless, "Indiana policy favors arbitration," *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 905 (Ind.2004), and

" '[c]ourts in Indiana have long recognized the freedom of parties to enter into contracts and have presumed that contracts represent the freely bargained agreement of the parties.' " *Id.* at 906 (quoting *Trimble v. Ameritech Publ'g, Inc.*, 700 N.E.2d 1128, 1129 (Ind.1998)). We find that this freedom to enter into contracts also encompasses the freedom to agree to arbitrate disputes.[7] That the Act would not otherwise apply provides no limitation on the parties' ability to come to such an agreement. Thus, we find no error in compelling arbitration in this case.

Affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

■

---

arbitration clause, were misstated. 597 N.E.2d at 3.

7. Furthermore, to find that a trial court cannot compel arbitration because a contract is exempt from coverage under the Act would ignore the potential application of the Federal Arbitration Act (the "FAA"). "The FAA applies to written arbitration provisions contained in contracts involving interstate commerce when the parties agree to arbitrate." *American Gen. Fin. Mgmt. Corp. v. Watson*, 822 N.E.2d 253, 256 (Ind.Ct.App.2005). "According to the United States Supreme Court, state laws generally applied to contracts may be applied to arbitration agreements, but courts may not invalidate arbitration agreements under state laws which are applicable only to arbitration agreements." *Id.* 257. To the extent that state law conflicts with federal law by "stand[ing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," state law may be preempted. *Id.*