

**FILED**

Jun 25 2018, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jason M. Smith
W. Brent Gill
Smith Law Services, P.C.
Seymour, Indiana

ATTORNEYS FOR APPELLEES

Stacy Walton Long
William J. Barkimer
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Earley and
Rhonda Earley,

*Appellants-Plaintiffs,*

v.

Edward Jones & Co., LP,
Edward Jackson, and Adam
Jackson,

*Appellees-Defendants.*

June 25, 2018

Court of Appeals Case No.
36A04-1710-PL-2258

Appeal from the Jackson Superior
Court

The Honorable Bruce Markel III,
Judge

Trial Court Cause No.
36D01-1611-PL-44

**Barnes, Senior Judge.**

## Case Summary

David and Rhonda Earley ("the Earleys") appeal the trial court's stay and order compelling arbitration in their action against Edward D. Jones & Co., LP ("Edward Jones"), Edward Jackson, and Adam Jackson (collectively, "Defendants"). We affirm.

## Issues

The Earleys raise two issues, which we restate as:

I.  whether the trial court properly found that the arbitration agreements between the parties were enforceable; and

II. whether the trial court properly found that the Federal Arbitration Act applied rather than Missouri law.

## Facts

Edward Jones is a national corporation based in Missouri and doing business in Jackson County, Indiana, and Edward Jackson and Adam Jackson were employees/agents of Edward Jones. In 1998, David Earley opened a Roth Individual Retirement Account ("IRA") with Edward Jones. The Adoption Agreement, which David signed, provided: "I appoint Edward Jones to serve as Custodian in accordance with the terms and conditions of the Edward Jones Self-Directed Individual Retirement Account Custodial Agreement, which contains a pre-dispute arbitration clause. I hereby acknowledge that I have received and read such Agreement and the Disclosure Statement and Schedule

of Fees accompanying it." Appellants' App. Vol. II p. 31. The Custodial Agreement provided, in part:

> Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Boards of Directors of the New York Stock Exchange, Inc., the American Stock Exchange, Inc., the Municipal Securities Rulemaking Board, or the National Association of Securities Dealers, Inc. as I may elect.

*Id.* at 44.

[4] In 2005, the Earleys opened a joint account with Edward Jones. They signed an Account Authorization and Acknowledgement Form, which provided: "The Edward Jones Account Agreement and Disclosure Statement contains on page 20 a binding arbitration provision which may be enforced by the parties. By my/our signature below, I/we have received a copy of this document . . . and agree to its terms and conditions." *Id.* at 45. That agreement contained an arbitration clause similar to the earlier arbitration clause.

[5] In 2009, David executed a revised Roth IRA agreement. David acknowledged that he had received and reviewed the Retirement Account Agreement, which contained a binding arbitration clause similar to the earlier arbitration clauses. The document also provided: "THESE CONTRACTS CONTAIN A

BINDING ARBITRATION PROVISION . . . WHICH MAY BE ENFORCED BY THE PARTIES." *Id.* at 74. Also in 2009, the Earleys opened traditional IRAs with Edward Jones. They signed a document acknowledging that they had received and reviewed the Retirement Account Agreement, which contained a binding arbitration provision similar to the earlier provisions. The document also provided: "THESE CONTRACTS CONTAIN A BINDING ARBITRATION PROVISION . . . WHICH MAY BE ENFORCED BY THE PARTIES." *Id.* at 87, 89, 91. Finally, in 2014, Rhonda opened another IRA account with Edward Jones. She signed an Account Authorization and Agreement Form, in which she acknowledged receiving and reviewing the Account Agreement, which contained a binding arbitration provision similar to the earlier provisions. The document also provided: "THE EDWARD JONES ACCOUNT AGREEMENT CONTAINS . . . A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Appellants' App. Vol. III p. 31. All of the agreements also provided that the agreement was to be governed by the laws of the State of Missouri.

In November 2016, the Earleys filed a complaint against the Defendants regarding a significant decrease in funds that the Earleys invested with Edward Jones. The Earleys' complaint alleged breach of contract, negligence, constructive fraud, and conversion. Defendants filed a motion to dismiss or to compel arbitration and stay the proceedings. Defendants alleged that the Earleys' agreements with Edward Jones contained binding arbitration

provisions, that the disputes fell within the scope of the arbitration provisions, and that Missouri law governed.

[7] The Earleys responded and argued: (1) the provisions are not valid under Missouri law because they lack the language and format required by Missouri Revised Statutes Section 435.460; and (2) they "were never presented with the arbitration provisions in question and their signatures were obtained by misrepresentation as to the substance of the signed documents which contained the arbitration provisions." *Id.* at 48. The Earleys submitted affidavits in which they alleged that the forms were presented merely as forms to open an account, they trusted Jackson to advise them of relevant facts regarding the documents, they were not given the agreements containing the arbitration provisions, and Jackson never discussed the agreements or arbitration provisions with them.

[8] The trial court held a hearing on Defendants' motion. At the hearing, Defendants argued that the Federal Arbitration Act ("FAA") preempted Missouri law and governed the parties' agreements. The trial court then allowed the parties to submit additional briefs. Defendants argued that the FAA applied because the contracts involve interstate commerce and that the Earleys acknowledged in writing that they received the agreements and that they contained arbitration provisions. The Earleys then filed another response arguing that the Defendants' misrepresentations voided any contracts and that FAA was not controlling. After a second hearing, the trial court entered findings of fact and conclusions thereon granting Edward Jones's motion to compel arbitration. In particular, the trial court found:

The Plaintiffs' counsel attached to their first response, affidavits from Mr. and Mrs. Earley to support the argument that the contracts are void because the Defendants misrepresented the contractual documents; "as mere forms to authorize transactions". The Plaintiffs, Earleys, allege they were told on each occasion they signed account agreements that the forms merely authorized the opening of accounts (emphasis added), transfer of funds and/or naming beneficiaries.

The forms did "authorize transactions" and was [sic] exactly what was being authorized by the Plaintiffs' signatures. The Earleys acknowledge they went to the Defendants for the very purpose of doing financial planning and having their money invested for them. Each contract they signed from 1998 to and through July 29, 2014, clearly refers to account agreements, disclosure statements and in the later documents, arbitration clauses, immediately above their signatures. In addition, in the contracts signed from 2009 and on, language appears in the paragraph above the Plaintiffs' signatures acknowledging that they have received and read the account agreements. Again, in the later documents, directly above their signatures, in bold type, is a statement that there are arbitration provisions in the contract including the page and paragraph numbers where found.

There is no allegation that the Plaintiffs ever asked to read or review the contracts before they signed, but were refused.

* * * * *

With regard to the issue of void contracts, the Court must look to Indiana law. If there never was a contract, the choice of law provisions of the contracts in question never took effect and therefore don't control.

The Court finds insufficient evidence of fraudulent inducement or misrepresentation to void the contracts under Indiana law. The fact that the Defendant's [sic] did not provide copies after the fact is irrelevant. The contracts were already signed.

The Earleys simply chose not to read the contracts and chose to remain ignorant of the terms and conditions thereof.

The Court finds that all of the contracts in controversy were or are valid and enforceable.

Indiana recognizes choice of law provisions in contracts.

Missouri's arbitration notice statute applies to each of the contracts in issue in this case.

The contracts in question do not substantially comply with Missouri's arbitration notice statute and the arbitration provisions are unenforceable under Missouri law.

Missouri's arbitration notice statute is in derogation of the agreement of the Parties to arbitrate in each of the contracts in question.

The Defendants have asked to invoke application of the FAA. 9 U.S.C.S. § 3 and require arbitration in spite of Missouri law.

* * * * *

The procedural requirements of the FAA have been met. This Court has ruled that the contracts in question are valid and enforceable [sic] 9 U.S.C.S. § 4. The contracts in question evidence transactions involving ("interstate") commerce. 9

U.S.C.S. § 2. The Defendants have asked for the act to be applied. 9 U.S.C.S. § 3. Missouri law would prevent arbitration otherwise. 9 U.S.C.S. § 2.

The FAA should be applied to each contract in question in this matter.

Appellants' App. Vol. II pp. 9-11. The trial court stayed the litigation pending arbitration and ordered that the parties arbitrate the claims in the Earleys' complaint. The Earleys now appeal.

## Analysis

[9] The Earleys appeal the trial court's grant of Defendants' motion to compel arbitration. We begin by addressing the parties' argument regarding the proper standard of review. Defendants argues that we should review the trial court's findings of fact and conclusions of law under a clearly erroneous standard and give due regard to the trial court's ability to assess a witness's credibility. The Earleys contend that our review is de novo. We agree with the Earleys.

[10] "Our review of a trial court's order compelling arbitration is de novo." *Maynard v. Golden Living*, 56 N.E.3d 1232, 1237 (Ind. Ct. App. 2016). We held in *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 775 (Ind. Ct. App. 2011), that the review of a motion to compel arbitration is similar to that of a motion for summary judgment. We concluded that, "like parties opposing motions for summary judgment, parties opposing motions to compel arbitration may designate and rely on evidence beyond the pleadings and written contractual instruments." *Brumley*, 945 N.E.2d at 775. As in summary

judgment proceedings, there were no evidentiary hearings here, and there was no opportunity for the trial court to judge a witness's credibility. Further, just as we are not bound by a trial court's specific findings of fact and conclusions thereon in the context of summary judgment proceedings, we are not bound by them here. *Estate of Spry v. Batey*, 804 N.E.2d 250, 252 (Ind. Ct. App. 2004), *trans. denied*.

## I. Validity of Arbitration Provisions

[11] The Earleys argue that the arbitration provisions are invalid because the contracts were misrepresented to them by Defendants. "Indiana recognizes a strong policy favoring enforcement of arbitration agreements." *Progressive Se. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 88 N.E.3d 188, 194 (Ind. Ct. App. 2017). Because arbitration is a matter of contract, a party cannot be required to submit to arbitration unless he or she has agreed to do so. *Id.* Arbitration is a method to resolve disputes, but only disputes that the parties have mutually agreed to submit to arbitration. *Id.*

[12] "A party seeking to compel arbitration first must demonstrate the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim that the parties agreed to arbitrate." *Brumley*, 945 N.E.2d at 776. "Like other contracts, however, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* "State law contract principles apply to determine whether parties have agreed to arbitrate." *Id.*

[13]    In support of their argument, the Earleys rely on *A.G. Edwards and Sons, Inc. v. Hilligoss*, 597 N.E.2d 1 (Ind. Ct. App. 1991), where a customer filed a complaint against an investment broker, and the broker filed a motion to stay the proceedings pending arbitration. The trial court denied the broker's motion, and the broker appealed. The customer argued that the broker misrepresented the contents of the contract and that fraudulent inducement voided the agreement. We found that "[s]ubstantial evidence" supported the trial court's finding that the customer's signature was procured by representing the agreement as a loan document rather than a customer agreement form. *Hilligoss*, 597 N.E.2d at 3. Consequently, we affirmed.

[14]    *Hilligoss* is distinguishable from this case. In *Hilligoss*, "the fraud went to the actual contents of the contract, and the facts regarding the contract, which included the arbitration clause, were misstated." *Novotny v. Renewal by Andersen Corp.*, 861 N.E.2d 15, 21 n.6 (Ind. Ct. App. 2007). "'This result only follows, however, if the misrepresentation relates to the very nature of the proposed contract itself and not merely to one of its nonessential terms.'" *Brumley*, 945 N.E.2d at 779 (quoting Restatement (Second) of Contracts § 163 (1981)). Here, the Earleys allege that the contractual documents were presented "as mere forms necessary only for the opening of an account or some other single action." Appellants' Br. p. 12. They contend that Edward Jones's employees did not give them an opportunity to read the agreements or explain the agreements. However, there is no evidence that Edward Jones's employees misrepresented the contents of the documents signed by the Earleys. Rather,

the Earleys signed the documents without reading them. "Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997). The trial court found:

> The Court finds insufficient evidence of fraudulent inducement or misrepresentation to void the contracts under Indiana law. The fact that the Defendant's [sic] did not provide copies after the fact is irrelevant. The contracts were already signed.

> The Earleys simply chose not to read the contracts and chose to remain ignorant of the terms and conditions thereof.

> The Court finds that all of the contracts in controversy were or are valid and enforceable.

Appellants' App. Vol. II p. 10. We agree with this conclusion. The Earleys have failed to present contract defenses to invalidate the agreements.

## II. *Applicability of the Federal Arbitration Act*

Next, the Earleys argue that the trial court erred when it determined that the FAA preempted application of Missouri law. According to the Earleys, Missouri law applies, and the arbitration agreements are unenforceable because they failed to comply with Missouri law's notice of arbitration statute, Missouri

Revised Statutes Section 435.460.[1]  The trial court disagreed and concluded that the FAA, not Missouri law, controlled.

[16]  The FAA applies to written arbitration provisions contained in contracts involving interstate commerce.  *See* 9 U.S.C. §§ 1-16; *MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 904 (Ind. 2004) "The [FAA] reflects congressional intent to 'foreclose state legislative attempts to undercut the enforceability of arbitration agreements.'"  *LaSalle Grp., Inc. v. Electromation of Delaware Cty., Inc.*, 880 N.E.2d 330, 331 (Ind. Ct. App. 2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S. Ct. 852 (1984)).  "The Act contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."  *Id.*  "But state law may be pre-empted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* (quoting *MPACT*, 802 N.E.2d at 904).  "Preemption has been found where state statutes 'explicitly made certain arbitration clauses unenforceable or placed serious burdens on the enforceability of arbitration provisions.'"  *Id.* (quoting *MPACT*, 802 N.E.2d at 905).

---

[1] Missouri Revised Statutes Section 435.460 provides:

> Each contract subject to the provisions of sections 435.350 to 435.470 shall include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read substantially as follows:

> "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."

[17] The parties do not dispute here that the agreements at issue affect interstate commerce. Rather, their arguments focus on whether the Missouri notice of arbitration statute is preempted by the FAA. In support of their argument, the Earleys rely on *Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329 (Ind. Ct. App. 1991), *trans. denied, cert. denied*. In *Albright*, customers bought investments through Edward Jones, and the agreements contained arbitration provisions and provisions calling for the application of Missouri law. The trial court entered an order compelling arbitration. On appeal, we addressed whether the notice of arbitration provisions of Missouri Revised Statutes Section 435.460 were preempted by the FAA. We relied on *Volt Information Sciences Inc. v. Board of Trustees,* 489 U.S. 468, 109 S. Ct. 1248 (1989), in which "the Supreme Court held that state law was not pre-empted by the Federal Arbitration Act where the parties have agreed that their arbitration agreement will be governed by state law." *Albright*, 571 N.E.2d at 1332-33. We found that *Volt* was controlling and looked "to Missouri law in our construction of the contracts." *Id.* at 1333. We concluded, in part, that the arbitration clauses would not be enforceable under Missouri law, and we reversed the trial court's order compelling arbitration.

[18] Defendants point out that, after *Albright* was decided, the United States Supreme Court clarified *Volt*. In *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688, 116 S. Ct. 1652, 1656-57 (1996), the Supreme Court held:

> *Volt* involved an arbitration agreement that incorporated state procedural rules, one of which, on the facts of that case, called for arbitration to be stayed pending the resolution of a related judicial proceeding. The state rule examined in *Volt* determined

only the efficient order of proceedings; it did not affect the enforceability of the arbitration agreement itself. We held that applying the state rule would not "undermine the goals and policies of the FAA," 489 U.S., at 478, 109 S. Ct., at 1255, because the very purpose of the Act was to "ensur[e] that private agreements to arbitrate are enforced according to their terms," id., at 479, 109 S. Ct., at 1256.

*Casarotto*, 517 U.S. at 688, 116 S. Ct. at 1656-57. The court then held that Montana's notice of arbitration requirements, which required notice that a contract was subject to arbitration to be included in underlined capital letters on the first page of the contract, would have invalidated the arbitration clause and was "inconsonant with, and is therefore preempted by, the federal law." *Id.,* 116 S. Ct. at 1657.

[19] The Missouri notice of arbitration statute is similar to the Montana notice of arbitration statute discussed in *Casarotto*. Consequently, we find *Casarotto* more persuasive here than *Albright*. We further note that Missouri courts have repeatedly held that the notice of arbitration provisions of Missouri Revised Statutes Section 435.460 are preempted by the FAA in cases of interstate commerce. *See, e.g., Duggan v. Zip Mail Servs., Inc.*, 920 S.W.2d 200, 203 (Mo. Ct. App. 1996) ("Applying the Missouri Act to defeat arbitration in instances where the FAA permits it would place the state act above the federal act, violating the Supremacy Clause of the Constitution."); *Kagan v. Master Home Products Ltd.*, 193 S.W.3d 401, 407-08 (Mo. Ct. App. 2006) (holding that, even if Missouri law applied, the notice of arbitration provisions were preempted by the FAA); *Paetzold v. Am. Sterling Corp.*, 247 S.W.3d 69, 74 (Mo. Ct. App. 2008)

(holding that the arbitration clause was enforceable despite the lack of the notice of arbitration language). Given this authority, we agree with the trial court that the FAA is applicable here and preempts the Missouri notice of arbitration statute.

## Conclusion

[20] The arbitration agreements between the parties are enforceable and subject to the FAA. The trial court properly granted the Defendants' motion to compel arbitration. We affirm.

[21] Affirmed.

Vaidik, C.J., and Pyle, J., concur.