HOMES BY PATE, INC.,
Appellant–Plaintiff,

v.

Christel DeHAAN, Appellee–Defendant.

No. 06A04–9804–CV–196.

Court of Appeals of Indiana.

June 18, 1999.

---

Thomas B. Blackwell, Eric D. Johnson, Kightlinger & Gray, Indianapolis, Indiana, Attorneys for Appellant.

Julia Blackwell Gelinas, Alan S. Brown, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Plaintiff Homes by Pate, Inc. ("Pate") appeals the trial court's order granting judgment in favor of Appellee–Defendant Christel DeHaan ("DeHaan") on Pate's amended complaint for stay of arbitration. We affirm.

### Issue

Pate raises two issues on appeal which we consolidate and restate as whether the trial court erred in denying the motion to stay and in ordering the parties to proceed to arbitration.

### Facts

On May 23, 1990, Pate and DeHaan entered into a Residential Building Contract by which Pate agreed to construct a residence for DeHaan.[1] The contract contained the following provision:

[Pate] warrants to [DeHaan] that the work performed under this Agreement shall be done in a good and workmanlike manner in accordance with the Plans and Specifications and generally accepted building practices.... [Pate] DOES HEREBY WARRANT TO [DeHaan] THAT THE HOME AND ALL WORK INCIDENT THERETO SHALL BE FREE FROM ALL DEFECTS AND [Pate] SHALL PROVIDE [DeHaan] WITH A WRITTEN WARRANTY AND SERVICE POLICY ... WHICH IS ATTACHED HERETO ... INCORPORATED HEREIN AND EXPRESSLY MADE A PART HEREOF, THE RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED BY [DeHaan].

(R. 150–51). The Contractor's Warranty and Service Policy ("the warranty") provided in relevant part as follows:

[Pate] will correct improper workmanship and repair or replace defective materials or components which have caused any substantial structural alteration or change in the home, subject to the limitations set forth in Section II.

. . . .

In the event a dispute arises with respect to whether particular repairs or replacements are covered by the WARRANTY, whether covered in Part I, Part II, Part III, Part IV or Part V, and such dispute cannot be amicably resolved, [Pate], the SUBCONTRACTORS, and [DeHaan], agree that the dispute will be settled by arbitration in accordance with standard construction industry practice and the rules of the American Arbitration Association....

(R. 169, 174–75). Finally, the warranty provided as follows:

---

1. Effective April 28, 1994, Pate's corporate name was amended to HBP, Inc. HBP, Inc. was dissolved on February 2, 1996.

If a problem is experienced in any of the above identified areas, it is the responsibility of [DeHaan] to promptly notify [Pate]. [Pate] will, upon receiving the written notice, take the necessary action to help insure that the subcontractor resolves said problems in strict compliance with his written WARRANTY.

(R. 171). The terms of the warranty were valid for a period of two years from the date of occupancy.

DeHaan assumed possession of the residence on November 10, 1991. Within six months, problems with the home's heating and cooling system developed. Apparently Pate refused to correct the defects, and on November 20, 1997, DeHaan filed a demand for arbitration with the American Arbitration Association. Pate thereafter filed an Amended Complaint for Stay of Arbitration pursuant to IND.CODE § 34–4–2–3(b)[2] claiming no enforceable agreement to arbitrate existed.[3] After two hearings on the matter, the trial court entered findings and conclusions denying Pate's motion to stay and ordering the parties to proceed to arbitration. This appeal ensued.

### Discussion and Decision

#### Standard of Review

It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Northwestern Mut. Life Ins. Co. v. Stinnett*, 698 N.E.2d 339, 343 (Ind.Ct.App.1998). Nevertheless, arbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so. *Id.* at 341 (quoting *International Creative Management, Inc. v. D & R Entertainment Co., Inc.*, 670 N.E.2d 1305, 1311 (Ind.Ct.App. 1996, *trans. denied*)). Where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute. *International Creative Management*, 670 N.E.2d at 1311; *see AT & T Techs., Inc.*

*v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("the question of arbitrability—whether [an agreement] creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination"). In answering this question, the court decides whether the dispute, on its face, is covered by the language of the arbitration provision. *Chesterfield Management, Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind.Ct.App. 1995), *trans. denied.* Additionally, before a court compels arbitration, it must first resolve any claims concerning the validity of the contract containing the arbitration clause. *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 99 (Ind.1994). Once satisfied that the parties contracted to submit their disputes to arbitration, the court is required by statute to compel arbitration. *Id.; see* IND.CODE § 34–57–2–3(a) ("[o]n application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."). Judicial inquiry is thus limited to the validity of the contract containing the arbitration clause, not the construction of that clause. *PSI Energy*, 644 N.E.2d at 99.

#### Agreement to Arbitrate

Pate contends the trial court erred in denying Pate's motion to stay and in ordering the parties to proceed to arbitration. Among other things, Pate claims the trial court's conclusion that a valid and enforceable arbitration agreement exists is unsupported by the evidence. In support of this contention, Pate argues that the unambiguous terms of the contract extended warranty protection only through November 10, 1993, two years from the date of residential occupancy. Because the agreement to arbitrate was part of the warranty, the argument continues, the parties likewise intended that the same two-year time limit apply to the arbitration agreement. Consequently, Pate claims, because the provision obligating the parties to

---

2. Effective July 1, 1998, IND.CODE § 34–4–2–3 was repealed and recodified without amendment at IND.CODE § 34–57–2–3. P.L. 1–1998, §§ 53, 221. Citations herein are to the current version of the statute.

3. The original complaint for stay of arbitration was filed by Chadifer Corporation, which purchased Pate's assets on December 30, 1993. By order dated January 21, 1998, Chadifer Corporation was dismissed from the action.

arbitrate disputes regarding the warranty terminated before DeHaan gave written notice of her claim, the warranty provisions are neither valid nor enforceable.

DeHaan counters that Pate's contentions amount to an impermissible attempt to litigate the merits of DeHaan's claim, and that such a dispute must be resolved in arbitration, not before the trial court. In support of this argument, DeHaan claims that the contract between the parties expressly reserved for arbitration any questions regarding whether certain repairs are covered under the warranty. According to DeHaan, logic dictates that determinations such as the duration of the warranty and agreement to arbitrate likewise be reserved for arbitration.

Citing the language of the warranty, the trial court found that the parties' dispute was essentially "with respect to whether particular repairs or replacements are covered by the warranty." (R. 208). The court further characterized Pate's argument that both the warranty and the duty to arbitrate disputes thereunder had expired as a defense "relat[ing] to the merits of [DeHaan's] underlying claims against [Pate]." (R. 208). The trial court thus ordered that all aspects of the parties' dispute be submitted to arbitration. However, at the outset, we must address the threshold issue of whether the parties' dispute over the termination of the warranty is arbitrable. That is, we must determine whether the parties intended for disputes over the duration of the warranty and its accompanying arbitration clause to be resolved through arbitration, or whether the issue is one reserved for the court.

 As previously noted, Pate contends our inquiry should focus simply upon whether the terms of the warranty have expired. If the warranty has expired, Pate claims, the obligation to arbitrate any disputes arising thereunder has likewise terminated. However, "to take this approach obviously requires deciding, or coming close to deciding, the very issue of the agreement's duration whose arbitrability is in issue. For good reason, this circular approach has been rejected as one that necessarily compromises decision on the very matter in dispute in the course of deciding who shall decide it." *Virginia Car-olina Tools, Inc. v. International Tool Supply, Inc.*, 984 F.2d 113, 118 (4th Cir.1993), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2930, 124 L.Ed.2d 681. The proper approach is rather to treat the question as one of contract interpretation, asking whether the parties, at the time they entered into the contract, intended that disputes over contract expiration would be decided by a court or by an arbitrator. *Id.* (quoting *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 760 (D.C.Cir.1988)).

Both parties discuss *National R.R.*, citing its factual similarity to the instant case, as well as its useful framework for resolving disputes over the arbitrability of contract duration issues. In *National R.R.*, Amtrak executed an agreement with the Boston & Maine Corporation ("B & M") to operate train service over a portion of track owned by B & M. The contract contained a clause obligating the parties to arbitrate "[a]ny claim or controversy ... concerning the interpretation, application or implementation of this Agreement...." *Id.* at 758. After a protracted dispute over the condition of the track, Amtrak initiated an arbitration proceeding under the contract. B & M refused to submit to arbitration, arguing the contract had expired; Amtrak maintained the agreement remained in effect, having been extended by agreements signed by both parties. The trial court refused to determine the vitality of the arbitration clause, reasoning that the parties' contract obligated them to arbitrate even those disputes which related to the expiration of the contract and its accompanying arbitration clause. *Id.* at 758–59.

On appeal, the District of Columbia Circuit affirmed the trial court and set forth certain guidelines for determining whether an arbitration clause requires disputes over the expiration of a contract to be submitted to arbitration, or whether the clause remits such disputes to the courts. Specifically, the court distinguished three types of arbitrability disputes: 1) those concerning the formation of an agreement to arbitrate, i.e., whether the parties ever agreed to submit anything to arbitration in the first place; 2) disputes concerning the breadth of an arbitration clause, i.e., whether a certain issue

falls within or without the subject matter coverage of an undisputed agreement to arbitrate; and 3) disputes concerning the temporal length of the arbitration clause. *Id.* at 761.

In this case, as in *National R.R.*, the third type of dispute is implicated. That is, the parties agree that, at one time, they entered into a valid arbitration clause, but one party contends that the agreement expired before the other party sought to compel arbitration. The court made the following observation regarding whether such disputes should be referred to arbitration:

> As to questions of length . . . the parties have it within their power to specify the date and hour at which their obligation to arbitrate is to end, or to specify a clear condition subsequent, such as sending of notice, giving any party the right to terminate that obligation. Where they have done so, there is nothing fairly arguable to refer to arbitration. Where they have not, the court performs its office of interpretation when it infers that they intended for the arbitrator to resolve the ambiguity.

*Id.* at 762. Recognizing that "the breadth of the arbitration clause does bear on the question of who must determine its length," the court set forth the following general rules for determining who should resolve disputes over the termination or expiration of an arbitration clause. *Id.* Narrowly drawn arbitration clauses which cover only specified types of disputes create a presumption that the parties did not intend disputes over contract duration to be referred to arbitration. *Id.* Broader arbitration clauses, such as ones providing generally that disputes "arising under" or "concerning" the contract are to be arbitrated, give rise to the presumption that disputes over termination or expiration of the contract should be submitted to arbitration. *Id.; see AT & T,* 475 U.S. at 650, 106 S.Ct. 1415 (stating that the strong presumption in favor of arbitrability applies with greater force when an arbitration clause is broad in scope). However, the presumption created by a broadly drafted arbitration clause may be overcome by a clear showing that the parties intended for the underlying contract to expire, or separately agreed to terminate

it, before the relevant dispute arose. *National R.R.,* 850 F.2d at 762–63.

Applying these guidelines to the instant case, we observe that the arbitration clause obligated the parties to arbitrate any dispute "with respect to whether particular repairs or replacements are covered by the WARRANTY." (R. 174). The clause is a narrow one, reserving for arbitration only those disputes relating to the scope of warranty coverage. As such, it is the court's responsibility to decide the question of duration, unless DeHaan, the party seeking arbitration, makes a clear showing that the parties intended such disputes to be arbitrated. *See National R.R.,* 850 F.2d at 762. DeHaan has made no such showing here, and the plain language of the warranty reveals no clear intent by the parties to refer to arbitration disputes over contract duration. Consequently, as a matter of contract interpretation, the dispute over the duration of the warranty and its arbitration clause is a matter for the court's resolution.

Having determined that the parties intended for disputes over duration of the warranty and arbitration clause to be resolved by the court, we proceed to determine whether the parties' obligation to arbitrate survived the termination of the warranty. Because the interpretation of unambiguous terms of an agreement to arbitrate is a matter of contract involving pure questions of law, we independently evaluate the agreement, substituting our judgment for that of the trial court if necessary. *St. John Sanitary Dist. v. Town of Schererville,* 621 N.E.2d 1160, 1162 (Ind.Ct. App.1993). Our primary function is to ascertain and effectuate the intent and reasonable expectations of the parties as expressed in the agreement. *See Union Sec. Life Ins. Co. v. Acton,* 703 N.E.2d 662, 664 (Ind.Ct.App.1998), *trans. denied.*

In this case, the language of the warranty provides that "[t]his Warranty and Service Policy shall be valid for a period of TWO (2) years from the effective date hereof." (R. 169). The arbitration clause contained in the warranty obligates the parties to arbitrate disputes "with respect to wheth-

er particular repairs or replacements are covered by the WARRANTY." (R. 174). Finally, the warranty provides that "[i]f a problem is experienced in any of the above identified areas, it is the responsibility of [DeHaan] to promptly notify [Pate]." (R. 171).

We agree with Pate that the warranty's termination date of two years from the time of occupancy is clear and unambiguous. Accordingly, warranty protection extended only through November 10, 1993, two years from the date of residential occupancy. However, we disagree that termination of the warranty automatically extinguished the parties' duty to arbitrate disputes thereunder. "Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 251, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Accordingly, a logical reading of the warranty leads to the conclusion that, so long as a defect has occurred within the two-year period of warranty coverage, any dispute concerning that coverage must be arbitrated. *See Liberty University, Inc. v. Kemper Sec. Group, Inc.,* 758 F.Supp. 1148, 1152 (W.D.Va.1991) ("arbitration clauses remain in effect after the termination of a contract as to matters occurring prior to the termination of the contract or subject to the obligations of the contract"). Based upon DeHaan's assertions, such a dispute exists here. Specifically, DeHaan contends that "beginning in approximately May or June, 1992 through November 10, 1993 and beyond, [DeHaan] ... frequently advised [Pate] of problems and defects caused by and relating to the HVAC system in her residence." (R. 251). Whether specific defects are covered by the warranty, and whether DeHaan gave prompt notice of her claim under the warranty, are questions properly reserved for arbitration. *See AT & T,* 475 U.S. at 649, 106 S.Ct. 1415 ("in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims"); *Goebel v. Blocks and Marbles Brand Toys, Inc.,* 568 N.E.2d 552, 557 (Ind.Ct.App.1991) (stating that issues arising after the formation of a contract and agreement to arbitrate are for arbitrator's resolution).

## Conclusion

The terms of the parties' agreement requires that disputes over the duration of the warranty and arbitration clause be resolved by the court. Having examined the terms of the warranty and its accompanying arbitration clause, we conclude that although the warranty expired two years after the date of occupancy, the parties' obligation to arbitrate disputes over warranty coverage continues as to matters occurring within the two-year period of coverage. Consequently, we affirm the trial court's order directing the parties to submit the merits of their claims to arbitration.

Affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.