Maribelle G. HARLOW and Ernst
& Young, LLP, Appellants–
Defendants,

v.

Gayle PARKEVICH, Individually, as Successor Trustee and Beneficiary of Amendment and Restatement of Vernon Payne Inter Vivos Trust, and as Beneficiary of Vernon Payne and Elva Payne Irrevocable Trust for Beverly Draper, Appellee–Plaintiff.

No. 29A02–0607–CV–569.

Court of Appeals of Indiana.

June 21, 2007.

Brian W. Welch, Karl L. Mulvaney, Phillip J. Fowler, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

Martha T. Starkey, Lisa M. Adler, Sang June Ryu, Starkey Law Group, PC, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Maribelle G. Harlow ("Harlow") and Ernst & Young, LLP ("Ernst & Young") (collectively, "Appellants") appeal the trial court's denial of their motion to stay litigation with Gayle Parkevich, individually, as successor trustee and beneficiary of the Amendment and Restatement of Vernon Payne Inter Vivos Trust, and as beneficiary of the Vernon Payne and Elva Payne Irrevocable Trust for Beverly Draper ("Parkevich"). Appellants raise one issue, which we restate as whether the trial court abused its discretion by denying their motion to stay the litigation pending alternative dispute resolution. We affirm in part, reverse in part, and remand.

The relevant facts as alleged in Parkevich's complaint follow. Janet Best and Beverly Draper are daughters of Vernon and Elva Payne. Parkevich and Paula Eller are daughters of Beverly Draper. On June 2, 1989, Vernon and Elva Payne created the Vernon Payne and Elva Payne Irrevocable Trust for Beverly Draper ("Irrevocable Trust"). Also on June 2, 1989, Vernon created the Vernon Payne Inter Vivos Trust, which was twice amended and restated ("Vernon's Trust").

Harlow is an attorney and practiced law with her husband, Stephen A. Harlow ("Stephen"), at the law firm of Harlow & Harlow. Harlow provided certain legal services for Vernon and Elva. Harlow left Harlow & Harlow in January 1990 to join

the tax department of Ernst & Young as a certified public accountant and then advised Vernon and Elva regarding certain tax, accounting, and allegedly legal matters. Stephen continued to provide legal advice to Vernon and Elva.

Elva died on February 10, 1995, and Vernon died on December 29, 1996. Their daughter, Janet Best, became the trustee of the Irrevocable Trust and Vernon's Trust upon Vernon's death. Parkevich, Eller, and Draper are beneficiaries of the Irrevocable Trust. Parkevich is named as successor trustee and a beneficiary of Vernon's Trust along with Draper and Eller.

Harlow and Ernst & Young provided services to Janet in her individual capacity and in her capacity as trustee of the Irrevocable Trust and Vernon's Trust. On January 23, 2002, Janet and Ernst & Young entered into an engagement letter ("Engagement Letter"), which contained the following provisions:

> This letter will confirm our engagement to prepare the income tax returns shown on Attachment B for you, either as the taxpayer individually or as the responsible party for the returns of the taxpayer. This engagement includes the preparation of estimated tax payments and extension, if necessary. You will advise us in writing if you want to engage us to prepare any other returns.

> \* \* \* \* \*

> [Information regarding various tax returns, confidential information, billing, audits]

> \* \* \* \* \*

> Ernst & Young LLP will not be liable for any claim for damages arising out of or in connection with any tax services provided herein to you in an amount greater than the amount of fees actually paid to Ernst & Young LLP with re-

> spect to the services directly relating to and forming the basis of such claim.

> Any controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for you or at your request (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of any entity for whom services are provided or of Ernst & Young, LLP, or involving any person or entity for whose benefit the services in question are or were provided), shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Attachment A to this letter. Judgment on any arbitration award may be entered in any court having jurisdiction.

> Generally, the subject tax returns will not be delivered until after this engagement letter is signed by you and returned to E & Y.

> Except as expressly provided herein, this engagement letter does not modify the terms or provisions of any engagement letter for other professional services which were agreed to prior to the date noted below.

> If any portion of this letter is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions of this letter shall remain in effect.

> \* \* \* \* \*

Appellants' Appendix at 200. Attachment A to the Engagement Letter provided:

> The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in our engagement letter of January 18, 2002. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and

binding on the parties to the fullest extent permitted by law.

\* \* \* \* \*

A dispute shall be submitted to mediation by written notice to the other party or parties....

\* \* \* \* \*

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration....

Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators....

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award (a) damages inconsistent with any applicable agreement between the parties or (b) punitive damages or any other damages not measured by the prevailing party's actual damages; and the parties expressly waive their right to obtain such damages in arbitration or in any other forum.....

\* \* \* \* \*

*Id.* at 202–203. Attachment B identified the tax returns to be prepared as the returns for the year beginning in 2001 for Janet and Willard Best, Payne Draper, Inc., Payne Estate Trust, and Payne Trust for Beverly Draper.

On May 24, 2005, Parkevich filed a complaint against Ernst & Young, Harlow, and Stephen. The complaint alleged that Harlow and Stephen breached their duties with respect to Vernon's Trust, that Ernst & Young breached its duties with respect to Vernon's Trust, that Stephen breached his duties with respect to the Irrevocable Trust, and that Stephen breached his duties due to conflicts of interest. On September 19, 2005, Appellants filed a motion to stay pending alternative dispute resolution. Following a hearing on the matter, Parkevich filed an amended complaint.

The amended complaint makes various allegations against Stephen, Harlow, and Ernst & Young for legal malpractice, negligence, negligent supervision, failing to comply with applicable professional accounting standards and regulations, and engaging in the unauthorized practice of law. Specific allegations were made regarding three events: (1) in 1997, the defendants incorrectly advised the Trustee to create a Best–Draper Farm Account and "transfer all the farmland owned by three (3) different owners—Janet (individually), Beverly (individually), and Vernon's Trust—into the Farm Account, thus comingling trust and non-trust assets, and trust and non-trust income;" (2) on March 14, 2002, "the Trustee sold farmland held by Vernon's Trust to another Beneficiary, Paula, for $62,633.13, a sum less than the 1996 appraised value of the property and substantially less than the 2002 fair market value of the property" and the defendants failed to advise Best to obtain the best price for the property and send notice to Parkevich as a beneficiary; and (3) on or about February 19, 1998, the defendants failed to advise Best of her duty to exercise due diligence before making a distribution to Beverly and terminating the Irrevocable Trust. Appellants' Appendix at 155–156.

In response to the Amended Complaint, Appellants filed a motion to withdraw the motion for a stay so that they could review the Amended Complaint and resubmit the motion if appropriate. The trial court granted the motion. In February 2006, Appellants filed a renewed motion for stay pending alternative dispute resolution. They argued that the 2002 Engagement Letter between Best and Ernst & Young contained an alternative dispute resolution ("ADR") provision that applied to the claims asserted by Parkevich regardless of whether the claims relate to accounting or legal services. Further, they argued that the scope of the ADR provision should be decided by the arbitrators. In response, Parkevich argued that: (1) the Engagement Letter was unenforceable due to violations of the Indiana Rules of Professional Conduct; (2) the Engagement Letter covered only tax services, not legal services; (3) most of the alleged misconduct occurred prior to the signing of the Engagement Letter; and (4) Parkevich was not bound by the Engagement Letter. After a hearing, the trial court denied the motion to stay. Specifically, the trial court found that the Engagement Letter related to the preparation of tax returns, and the preparation of tax returns was not an issue in the case.[1]

Our standard of review in this case is de novo. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595, 597 (Ind.Ct.App.2003) (citing *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 290 (Ind.Ct.App. 2001)). It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Homes By Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind.Ct.App.1999). Nevertheless, arbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so. *Id.*

"Where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute." *Int'l Creative Mgmt., Inc. v. D & R Entm't Co., Inc.*, 670 N.E.2d 1305, 1311 (Ind.Ct. App.1996), *reh'g denied, trans. denied.* "In answering this question, the court decides whether the dispute, on its face, is covered by the language of the arbitration provision." *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind.Ct.App. 1995), *reh'g denied, trans. denied.* "Of course then, before a court compels arbitration, it must first resolve any claims concerning the validity of the contract containing the arbitration clause." *Int'l Creative Mgmt.*, 670 N.E.2d at 1311 (citing *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 99 (Ind.1994)). "Once satisfied that the parties contracted to submit their disputes to arbitration, the court is required by statute to compel arbitration." *Id.; see* Ind.Code 34–57–2–3(a) ("On application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."). "Judicial

---

1. Parkevich argues that the trial court issued findings of fact. The trial court's written order simply denied Appellants' motion to stay. At the hearing, the trial court stated: "Court denies the motion to stay. The agreement that I have before me is an engagement letter for the preparation of tax returns and I don't see where those are an issue. That's the ruling. Anything else requires me to do things that I'm not willing to do. I'll need an order." Transcript at 32. During the hearing, the trial court asked the parties questions and made comments indicating that the arbitration provision in the Engagement Letter violated the Rules of Professional Conduct. However, the trial court's actual ruling was based only upon the fact that the Engagement Letter related to the preparation of tax returns and tax returns were not an issue in the case.

inquiry is thus limited to the validity of the contract containing the arbitration clause, not the construction of that clause." *Int'l Creative Mgmt.*, 670 N.E.2d at 1311 (citing *PSI Energy*, 644 N.E.2d at 99).

Thus, generally, we would determine whether the parties agreed to arbitrate the particular disputes at issue and whether the contract containing the arbitration clause is valid. However, here Appellants argue that any issue relating to the scope and enforceability of the ADR provision must be resolved by the arbitrators, not the trial court. In support of this argument, Appellants cite the following provision of the Engagement Letter:

> Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. . . .

Appellants' Appendix at 202.

According to Appellants, courts uniformly enforce such provisions. Appellants cite, although without any explanation or analysis, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).[2] In *First Options*, the United States Supreme Court considered who should have the primary power to decide the arbitrability of a dispute, the arbitrator or the court. *First Options*, 514 U.S. at 942, 115 S.Ct. at 1923. The Court determined that "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.* at 943, 115 S.Ct. at 1923. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944, 115 S.Ct. at 1924. However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[3] *Id.*

As a result, Appellants had the burden of demonstrating clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Appellants argue that, under a literal interpretation of the arbitrability provision, the provision indicates that arbitrators should resolve any issue "concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable." Appellants' Appendix at 202. This interpretation would result in absolutely any

---

**2.** Appellants also cite *Sanford v. Castleton Health Care Ctr., LLC,* 813 N.E.2d 411, 416 (Ind.Ct.App.2004), *trans. dismissed, Int'l Creative Mgmt.,* 670 N.E.2d at 1311, and *Homes by Pate,* 713 N.E.2d at 306 & 308, and *Air Line Pilots Assoc. v. Midwest Express Airlines,* 279 F.3d 553, 555 (7th Cir.2002), for the proposition that "[c]ourts uniformly hold that agreements containing such a provision are enforceable and require the question of whether a particular claim is subject to arbitration to be decided by the arbitrator and not by the court." Appellants' Brief at 21; Reply Brief at 12. None of these cases analyze whether the parties agreed to arbitrate arbitrability.

**3.** This issue has been the subject of much debate. *See, e.g.,* Stuart Widman, *What's Certain is the Lack of Certainty About Who Decides the Existence of the Arbitration Agreement,* 59–JUL Disp. Resol. J. 54 (May–July 2004); Joseph Franco, *Casually Finding the Clear and Unmistakable: A Re–Evaluation of First Options in Light of Recent Lower Court Decisions,* 10 Lewis & Clark L.Rev. 443 (Summer 2006); Jonathan Strang, *The Chicken Comes First: Who Decides if An Arbitrator Has Jurisdiction to Arbitrate?,* 16 Fed. Circuit B.J. 191 (2006).

issue between Appellants and Parkevich first being presented to the arbitrators to determine arbitrability, even if the issue is clearly not covered by the Engagement Letter. We conclude that this interpretation would bring about absurd results that are outside the intentions and expectations of the parties.

Our concerns regarding such an interpretation were aptly noted in *United States v. Stein*, 452 F.Supp.2d 230 (S.D.N.Y.2006), *vacated on other grounds by Stein v. KPMG, LLP*, 486 F.3d 753 (2nd Cir.2007):

> [T]he question whether a particular dispute is to be resolved by litigation or arbitration also is for the court "unless there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." This presumption, however, is reversed where the question is the scope of issues intended to be resolved by arbitration. In such cases, ambiguity concerning the scope of the arbitrable issues is decided in favor of arbitration. But this principle is not boundless. Arbitration of a particular grievance will not be ordered where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

(internal citations and footnotes omitted). Moreover, we note that in *First Options*, the Court expressed a concern about "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." 514 U.S. at 945, 115 S.Ct. at 1925. The Court emphasized "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id.*

In addition to providing that an arbitrator should decide issues of arbitrability, the Engagement Letter also states that the ADR provision applies to "[a]ny controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for you or at your request...." Appellants' Appendix at 200. We conclude that the issue is more appropriately phrased as whether the parties clearly and unmistakably intended to require arbitration over the arbitrability of the claims at issue here, i.e. the creation of the Farm Account in 1997, the distribution to Beverly and termination of the Irrevocable Trust in February 1998, and the sale of property held by Vernon's Trust on March 14, 2002.

To resolve this issue, we begin by addressing the retroactivity of the Engagement Letter. The Engagement Letter is dated January 23, 2002. Parkevich's claims relate to three events, the creation of the Farm Account in 1997, the distribution to Beverly and termination of the Irrevocable Trust in February 1998, and the sale of property held by Vernon's Trust on March 14, 2002. Only the sale of the property held by Vernon's Trust occurred after the Engagement Letter was signed.

■ The ADR provision in the Engagement Letter specifically applies to "[a]ny controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for you or at your request...." Appellants' Appendix at 200. Nothing in the Engagement Letter indicates that the ADR provision was intended to apply retroactively to previous services. We conclude that the pre-January 2002 disputes are clearly not covered by the Engagement Letter or its ADR provision. *See, e.g., Mislenkov*, 743 N.E.2d at 291 ("We are bound to resolve doubts in favor of arbitration, but Accurate Metal's claims

of pre-agreement wrongdoing do not reasonably fit within the specific language the parties used in the agreement."). Because these claims are so far outside the reach of the ADR provision, Appellants cannot demonstrate clear and unmistakable evidence that the parties agreed to arbitrate arbitrability of these issues. *See, e.g., Homes By Pate,* 713 N.E.2d at 308 (holding that "the plain language of the warranty reveals no clear intent by the parties to refer to arbitration disputes over contract duration"). The trial court did not abuse its discretion by denying Appellants' motion to stay pending arbitration regarding these two claims.

Having held that the ADR provision does not apply to the 1997 and 1998 events at issue, we must now address whether the ADR provision applies to the March 2002 sale of the trust property. The trial court found that the Engagement Letter related only to the preparation of tax returns and that the preparation of tax returns was not an issue in the case. On appeal, Appellants argue that the Engagement Letter covers all services provided by Ernst & Young regardless of whether the services were legal or tax related.

■ The ADR provision of the Engagement Letter applies to "[a]ny controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for you or at your request...." Appellants' Appendix at 200. A review of the Engagement Letter reveals that it confirms Ernst & Young's engagement to prepare certain income tax returns and discusses procedures for preparing the tax returns, audits, confidentiality, and other topics specifically related to the tax returns. We conclude that the services contemplated by the Engagement Letter are clearly and unambiguously only the preparation of certain 2001 tax returns. The March 2002 sale of the proper-

ty held by Vernon's Trust is not a "controversy or claim arising out of or relating to" the preparation of the 2001 tax returns. *Id.*

Appellants also contend that the March 2002 sale is a "controversy or claim arising out of or relating to services ... hereafter provided by us for you or at your request." *Id.* We agree. Under the plain language of the parties' agreement, the ADR provision is applicable to any "services" provided after the date of the Engagement Letter. While the Engagement Letter discusses only tax services for 2001, the ADR provision does not limit itself to tax services. Rather, it applies to any services "hereafter provided...." *Id.*

Although Parkevich argues that "[u]pon information and belief, ... [Harlow's] incorrect legal advice regarding such sale was made before the Engagement Letter was executed," Parkevich cites no authority for this proposition. Appellee's Brief at 28. The March 2002 claim, on its face, appears to be covered by the ADR provision in the Engagement Letter. We are constrained to interpret the parties' agreement as it is written. As a result, Appellants have shown that the parties clearly and unmistakably intended to require arbitration over the arbitrability of this claim. Any dispute over the arbitrability of this claim must first be presented to the arbitrator. We conclude that the trial court *abused its discretion by denying Appellants'* motion to stay regarding the March 2002 claim.

If the arbitrator determines that the March 2002 claim does not qualify as a "controversy or claim arising out of or relating to services ... hereafter provided by us to you or at your request," litigation on the March 2002 claim may continue. Appellants' Appendix at 200. On the other hand, if the arbitrator determines that the March 2002 claim qualifies as a "controver-

sy or claim arising out of or relating to services ... hereafter provided by us to you or at your request," resolution of the claim is governed by the ADR provision. *Id.* In the event that the mediation required under the ADR provision is unsuccessful and the parties proceed with arbitration, the arbitrator will be required to rule upon Parkevich's claims related to the March 2002 sale of the property. In doing so, the arbitrator would have to rule upon Parkevich's claims, if they are presented, that the Engagement Letter violated the Ind. Rules of Professional Conduct and is against public policy. *See, e.g., Trotter v. Nelson,* 684 N.E.2d 1150, 1153 n. 4 (Ind. 1997) (holding that an agreement in violation of explicit judicial declarations of Indiana public policy in the Rules of Professional Conduct are akin to contravening a statute and such agreements are unenforceable); *W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum and Plastic Workers of America,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) ("If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it."). Consequently, we do not address Parkevich's arguments that the Engagement

Letter violated the Ind. Rules of Professional Conduct and is against public policy.

Finally, Appellants argue that, even if only the March 2002 event is covered by the Engagement Letter, litigation concerning the other two events should be stayed pending arbitration of the March 2002 event. Although not mentioned by the parties, Ind.Code § 34–57–2–3(d) and (f) are relevant to this issue and provide: [4]

(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application for an order for arbitration has been made under this section (or IC 34–4–2–3 before its repeal), or, if the issue is severable, the stay may be with respect to the issue only. When the application is made in such an action or proceeding, the order for arbitration must include such a stay.

\* \* \* \* \*

(f) If the court determines that there are other issues between the parties that are not subject to arbitration and that are the subject of a pending action or special proceeding between the parties and that a determination of such issues is likely to make the arbitration unnecessary, the court may delay its order to

---

**4.** In support of their argument, Appellants cite three cases, *Parfi Holding AB v. Mirror Image Internet, Inc.,* 842 A.2d 1245 (Del.Ch. 2004), *Todd Shipyards Corp. v. Marine Vessel Leasing Corp.,* 456 F.Supp. 1384 (C.D.Cal. 1978), and *Woodlake Redevelopment Corp. v. Woodlake Condo. Assoc.,* 671 So.2d 253 (Fla. Ct.App.1996). However, none of these cases are persuasive. In *Parfi Holding,* the court ordered arbitration on some issues and stayed the remaining litigation pending the arbitration. 842 A.2d at 1263. The arbitrable and nonarbitrable issues were related and the court noted that the remedy, if any, ordered by the arbitrator would have to be considered in shaping the remedy for the remaining litigation. *Id.* In *Todd Shipyards,* the district court stayed the parties' nonarbitrable claims

pending arbitration of the other claims. 456 F.Supp. at 1389–1390. Without any explanation, the court noted that the nonarbitrable claims were "derivative." *Id.* Finally, Appellants cite *Woodlake* for the proposition that "state court action stayed while two counts of five count complaint subject to arbitration under Florida statutes regulating land sales proceeded in arbitration." Appellants' Brief at 23. However, a review of *Woodlake* reveals the court reached the opposite result. The complaint contained five counts, two of which were subject to arbitration. 671 So.2d at 254. The court ordered arbitration with respect to the two counts, stayed litigation on those two counts, and allowed the remaining counts to "go forward." *Id.* at 255.

arbitrate until the determination of such other issues or until such earlier time as the court specifies.

Under subsection (d), if the arbitrable issue is severable from the action, the trial court may stay the arbitrable issue pending arbitration and allow litigation on the nonarbitrable issues to continue. Under subsection (f), a trial court may delay arbitration if litigation of nonarbitrable issues in an action would make the arbitration unnecessary. *See, e.g., Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 320–321, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (Cal.2003) (holding that such a stay is appropriate where "[i]n the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective"); *The Redemptorists v. Coulthard Serv., Inc.,* 145 Md.App. 116, 801 A.2d 1104, 1126 (2002) (holding that the nonarbitrable fraud claims had to be stayed pending resolution of the arbitrable issue because the fraud claims depended upon the arbitrable issues).

Appellants make no argument that the creation of the Farm Account in 1997 and the distribution to Beverly and termination of the Irrevocable Trust in February 1998 are related in any way to the sale of property held by Vernon's Trust on March 14, 2002. From the amended complaint and the parties' descriptions of the events, the three events appear to be completely separate allegations of malpractice. Consequently, the alleged arbitrable issue is separable from the nonarbitrable issues, and both arbitration and the litigation can proceed at the same time. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (holding that the Federal "Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums").

For the foregoing reasons, we affirm in part and reverse in part the trial court's denial of Appellants' motion to stay the action pending alternative dispute resolution and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and CRONE, J., concur.