Smith BARNEY, Appellant–Defendant,

v.

STONEMOR OPERATING LLC, et al., Appellees–Plaintiffs.

No. 41A04–1103–MF–96.

Court of Appeals of Indiana.

Aug. 22, 2011.

F. Anthony Paganelli, Geoffrey G. Slaughter, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellant.

James L. Petersen, Fred R. Biesecker, Donald M. Snemis, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for

Appellees StoneMor Entities and Independence Trust Company.

## OPINION

CRONE, Judge.

### Case Summary

The trial court placed a mortuary business in receivership after its former owners alleged that the current owner had stolen millions of dollars from cemetery trusts that had been established pursuant to Indiana law to ensure the perpetual upkeep of prepaid burial plots and the delivery of prepaid funeral merchandise and services. The trial court ordered the receiver to take control of the business's operations and to marshal and account for the trust fund assets. The receiver filed suit against appellant Smith Barney, which held some of the cemetery trust accounts, alleging that it had participated in the plundering of the trust funds.

Appellee StoneMor Operating LLC ("StoneMor") agreed to purchase the mortuary business and was assigned the receiver's claims against Smith Barney. Appellee Independence Trust Company ("Independence Trust") was appointed trustee of both the existing cemetery trusts that had been administered by the receiver and new cemetery trusts that had been established by StoneMor. The trial court allowed both StoneMor and Independence Trust (collectively, "Appellees") to assert the receiver's claims against Smith Barney, which they did by filing a complaint.

One week later, Smith Barney filed a motion to compel arbitration, claiming that Independence Trust and, derivatively, StoneMor, were bound by an arbitration clause in Smith Barney account agreements signed by the two trustees that had administered the cemetery trusts prior to the receivership. The agreements stated that they would be binding on the trustees' "heirs, executors, administrators, assigns or successors in interest."

In response, Appellees pointed out that they were not parties to the agreements. Also, they argued that Independence Trust was not a "successor in interest" to either of the trustees and therefore was not bound by the agreements' arbitration clause; thus, there would be no basis for compelling StoneMor to arbitrate its claims. Appellees further argued that, in any event, Smith Barney had waived its right to compel arbitration by, among other things, failing to assert that right in response to the receiver's lawsuit.

The trial court denied Smith Barney's motion to compel arbitration, finding that Smith Barney had impliedly waived any right it might have had to compel arbitration of Appellees' claims. Smith Barney now appeals, claiming that the trial court erred in so finding. We conclude as a matter of law that Independence Trust was not a "successor in interest" to either of the prior trustees and therefore is not bound by the arbitration clause in the account agreements. Consequently, there is no basis for compelling StoneMor to arbitrate its claims. That being the case, we affirm the trial court's judgment.

### Facts and Procedural History

In December 2004, the Meyer family sold their mortuary business, Memory Gardens Management Company ("Memory Gardens"), to Robert Nelms. Nelms operated the Memory Gardens cemeteries and funeral homes as wholly-owned subsidiaries of Ansure Mortuaries of Indiana, LLC ("Ansure"). Following this transaction, Community Trust & Investment Company, Inc. ("Community Trust"), became the trustee of certain trusts that were funded with proceeds from the cemetery customers' advance purchases of burial plots and funeral services and merchandise. Pursu-

ant to Indiana law, the trust funds were to be used to ensure the perpetual upkeep of the burial plots and the delivery of the funeral services and merchandise.

In April 2005, Community Trust opened a trust account with Smith Barney and deposited a portion of the Ansure cemetery trust funds in that account. The account application states, "I acknowledge that I have received the Client Agreement which contains a pre-dispute arbitration clause on page 4, section 6." Appellant's App. at 894 (bold emphasis removed). The Client Agreement's arbitration clause says,

> I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB [Smith Barney] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member.

*Id.* at 897 (bold emphasis removed). The Client Agreement further states,

> The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall inure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my

heirs, executors, administrators, assigns or *successors in interest.*
*Id.* (emphasis added). Additionally, it provides that the agreement "and all the terms herein shall be governed and construed in accordance with the laws of the State of New York." *Id.*

In December 2005, Security Financial Management Company ("Security Financial") replaced Community Trust as trustee of the Ansure cemetery trusts. Security Financial also opened a trust account with Smith Barney and executed a client agreement containing language virtually identical to the foregoing.

In January 2008, the Meyer family sued Ansure. The Meyer family's lawsuit alleged that Nelms had stolen millions of dollars from the Ansure cemetery trusts, thereby jeopardizing the financial underpinnings of their transaction, and requested the appointment of a receiver to oversee the Ansure companies and trusts. The trial court appointed Lynette Gray as the receiver of the Ansure companies and ordered Gray ("the Receiver") to take control of and manage Ansure's operations and to marshal and account for the trust fund assets. In March 2008, the trial court ordered Security Financial to assist in the transfer of the trust funds to the Receiver.

In September 2009, the Receiver filed a third amended complaint against Smith Barney and others, asserting multiple claims and seeking damages "to reimburse the Receivership for all funds received from the Ansure Trusts." Appellees' App. at 61. In January 2010, StoneMor agreed to acquire the Ansure companies and advance almost $15,000,000 to new cemetery trusts established by StoneMor. As part of the acquisition, StoneMor purchased, and the Receiver assigned to StoneMor, the Receiver's claims and causes of action relating to the mishandling of the Ansure

cemetery trusts. The Meyer family also assigned its claims and causes of action regarding the cemetery trusts to Stone-Mor.

In April 2010, the trial court approved the sale of the Ansure companies to Stone-Mor and approved the appointment of Independence Trust as trustee of both the Ansure and the StoneMor cemetery trusts. Also, the court ruled that the Receiver's claims could continue to be pursued by StoneMor and Independence Trust. StoneMor's acquisition of the Ansure companies closed in June 2010.

In August 2010, StoneMor and Independence Trust filed a motion to be joined or substituted as plaintiffs. The trial court granted their motion on November 4, 2010, and they filed an amended complaint against Smith Barney and others the following day. One week later, Smith Barney filed a motion to compel arbitration of the claims asserted by StoneMor and Independence Trust. Smith Barney contended that, as a "successor trustee," Independence Trust was bound to arbitrate its claims against Smith Barney pursuant to the arbitration clause in the Client Agreements executed by its "predecessor trustees," Community Trust and Security Financial. Appellant's App. at 832. Smith Barney further contended that StoneMor was obligated to arbitrate its claims because they were "derivative" of Independence Trust's claims. *Id.* at 833.

In response, StoneMor and Independence Trust pointed out that they were not parties to the Client Agreements. They argued that Independence Trust was not a "successor in interest" to either Community Trust or Security Financial as provided in the Client Agreements and therefore

was not bound by the arbitration clause; thus, there would be no basis for compelling StoneMor to arbitrate its claims. They also argued that, in any event, Smith Barney had waived its right to compel arbitration by, among other things, failing to assert that right in response to the Receiver's lawsuit.

On March 2, 2011, the trial court denied Smith Barney's motion to compel arbitration, concluding that Smith Barney had impliedly waived any right it might have had to compel arbitration of Independence Trust's and StoneMor's claims. Smith Barney now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

Smith Barney contends that the trial court erred in denying its motion to compel arbitration. We review such a ruling de novo. *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct.App.2005), *trans. denied.*[1] We have stated that

> Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements. A party seeking to compel arbitration must satisfy a two-pronged burden of proof. First, the party must demonstrate the existence of an enforceable agreement to arbitrate the dispute. Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. Once the court is satisfied that the parties contracted to submit their dispute to arbitration, the court is required by statute to compel arbitration.

*Id.* (citations and quotation marks omitted).

1. Although the Client Agreements state that they are governed by New York law, both Smith Barney and Appellees cite primarily Indiana law in addressing the issues raised on appeal. Absent any indication that New York law differs substantively from Indiana law on any relevant point, we do likewise.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration unless he has agreed to do so." *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238, 1241 (Ind.Ct. App.2010). "Construction of the terms of a written arbitration contract is a pure question of law." *Id.* "In interpreting a contract, we give the language of the contract its plain and ordinary meaning." *Id.* Any ambiguity in a contract is construed against its drafter—in this case, Smith Barney. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind.2004).

Here, Appellees were not parties to the Client Agreements and therefore did not personally agree to submit to arbitration. Smith Barney asserts that Independence Trust is nevertheless bound by the arbitration clause contained in the Client Agreements signed by Community Trust and Security Financial "as a consequence of [Independence Trust] assuming the position as the *successor trustee* to those predecessor trustees." Appellant's Reply Br. at 18. Appellees correctly point out, however, that the Client Agreements do not contain the phrase "successor trustee"; indeed, the Client Agreements are not even specifically tailored to trust accounts. Rather, the Client Agreements specifically purport to bind the client's "successors in interest," which is something entirely different from a mere "successor trustee." *Cf. Ryan, Beck & Co. v. Fakih*, 268 F.Supp.2d 210, 229–30 (E.D.N.Y.2003) (addressing investor's argument that broker-dealer was brokerage firm's "successor-in-interest and thus [was] bound by [a] contractual arbitration provision" in investor's client agreement with brokerage firm: "[T]he Second Circuit has recognized a series of doctrines, based on 'common law principles of contract and agency law,' for binding non-signatories to arbitration agreements. In addition to assumption [2] and estoppel, these principles include the same theories under which a corporation that acquires the assets of another entity can be held to have assumed the predecessor's liabilities: a '*de facto*' merger of the two entities; a 'mere continuance' of the predecessor by the successor, or a fraudulent transfer.... To determine whether such a '*de facto* merger' or 'mere continuation' of the predecessor's business has occurred, courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. Each of these factors is relevant, but the presence or absence of any single factor is not determinative.") (citations and quotation marks omitted).[3]

With the possible exception of factor (3), it is undisputed that none of the foregoing factors applies in this case. To the extent Smith Barney suggests that factor (3) ap-

---

2. This "assumption" is different from the "assumption of liabilities" mentioned below. *See Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2nd Cir.1995) ("In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."). Clearly, Independence Trust has not engaged in such conduct here.

3. We note that the client agreement in *Ryan, Beck & Co.* stated that it would be binding on the signatories' "successors," which both the investor and the district court apparently construed as "successors-in-interest." 268 F.Supp.2d at 229. Because the Client Agreement in this case actually says "successors in interest," we find the analysis in *Ryan, Beck & Co.* persuasive.

plies in a contractual context,[4] Appellees point out that

> Independence Trust did not succeed to an existing trust and escrow agreement under which Community Trust [or Security Financial] had previously served as trustee; rather, StoneMor and Independence Trust created new trusts and escrows pursuant to their own trust and escrow agreements. These trusts and escrows are new legal entities with new tax identification numbers, and Independence Trust opened new accounts to hold the funds.

Appellees' Br. at 22 (citing affidavit of Independence Trust President Marcia Williams). As such, we conclude as a matter of law that Independence Trust is not a "successor in interest" to either Community Trust or Security Financial and therefore is not bound by the arbitration clause in the Client Agreements signed by those entities.[5] Consequently, there is no basis for compelling StoneMor to arbitrate its claims. Therefore, we affirm the trial court's judgment.[6]

Affirmed.

ROBB, C.J., and NAJAM, J., concur.

---

4. We note that Smith Barney does not suggest that "liabilities" include any statutory or fiduciary obligations that the trustees owed (and/or breached) to the cemeteries or their customers.

5. Smith Barney cites *Harlow v. Parkevich*, 868 N.E.2d 822 (Ind.Ct.App.2007), for the proposition that "a successor trustee is bound by an arbitration agreement entered into by its predecessor trustee relating to the trust." Appellant's Reply Br. at 18. We find *Harlow* inapposite because whether the successor trustee was a "successor in interest" for purposes of the arbitration agreement was not explicitly decided in that case. We are similarly unpersuaded by Smith Barney's reliance on *Kahn v. New York Times Co.*, 122 A.D.2d 655, 503 N.Y.S.2d 561 (N.Y.App.Div.1986), which does not even mention the relevant arbitration clause.

6. We acknowledge that the trial court did not address this issue, but Smith Barney does not dispute Appellees' contention that we may affirm the trial court's ruling on any theory or basis supported by the record.